IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| E-P INTERNATIONAL DISTRIBUTION INC., a Barbados corporation,<br><br>    Plaintiff,<br><br> v.<br><br>A&A DRUG COMPANY, a Nebraska corporation, and SAV-RX, LLC, a Nebraska limited liability company,<br><br>    Defendants,<br><br>JAMES BARTA,<br><br>    Defendant–Intervenor.<br><br>A&A DRUG COMPANY, a Nebraska corporation,<br><br>    Third-Party Plaintiff,<br><br> v.<br><br>BARBARA RIGBY and MALCOLM RIGBY,<br><br>    Third-Party Defendants. | 8:07CV186<br><br>MEMORANDUM AND<br><br>ORDER |

  This matter is before the court on motions filed by E-P International Distribution Inc. (EPI) for leave to issue subpoena duces tecum (Doc. 81) and to compel discovery (Doc. 119). The motions have been fully briefed. As discussed below, the court finds that the motions should be granted.

BACKGROUND

  Plaintiff, E-P International Distribution (EPI), formerly known as E-Pharma International, is a prescription fulfillment company located in Barbados. EPI has three one-third interest shareholders: Intervenor James Barta, the MMB Family Trust, and the B3M family Trust. The B3M

Family Trust is composed of third-party defendants Malcolm Rigby and Barbara Rigby, and their son, Marc Rigby. Barbara Rigby was the chair of EPI's board of directors and did the financial bookkeeping and record keeping for EPI. Malcolm was a paid consultant of EPI.

A&A Drug Company (A&A) is a national pharmaceutical provider located in Fremont, Nebraska. Sav-Rx, LLC (Sav-Rx) is a Nebraska limited liability company and is a pharmaceutical retailer located in Fremont, Nebraska. James Barta is the President of A&A, the sole member of Sav-Rx, and owns one-third of EPI. Third-party defendants Barbara Rigby and Malcolm Rigby reside in Ontario, Canada. Barbara was an officer and director of EPI. Malcolm was a paid consultant of EPI. Together, the Rigbys were a one-third shareholder of EPI. The remaining shares of EPI are owned by another Canadian resident.

As discussed in the court's Order filed on March 4, 2009 (Doc. 130), EPI seeks leave to issue a subpoena duces tecum to be served on accounting firm Dana F. Cole & Company, LLP commanding the production of

- Tax returns of James Barta (Barta), A&A Drug Company (A&A), and Sav-Rx, LLC (Sav-Rx) for the tax years 2002, through 2006;
- the documents and working papers used to prepare those returns;
- correspondence with Barta or representatives of A&A or Sav-Rx regarding tax benefits or tax effects of doing business with a company based in the Bahamas or Barbados;
- documents regarding Barta, A&A, or Sav-Rx doing business with or associating with a Bahamas-based or Barbados-based company (including any analysis of resulting tax benefits or tax effects); and
- documents related to EPI, E-Pharma International Corp., or E-Pharma International Limited.

Sav-Rx, A&A and Barta initially objected to the proposed subpoena on grounds of relevance and were granted leave to file amended pleadings, removing all allegations that the segregation of funds in specified bank accounts for the benefit of Barta and A&A would have resulted in substantial tax savings, and removing all claims for lost tax credits and savings in amounts exceeding $500,000. Sav-Rx, A&A and Barta filed their amended pleadings on March 11, 2009.

EPI's Motion to Compel (Doc. 119) pertains to requests for production of documents it served on Sav-Rx, A&A and Barta for

- all tax returns of A&A Drug Co. covering the tax years 2002 through 2006 (A&A)
- all audited and unaudited financial documents of A&A Drug Company including, but not limited to, income statements, bank statements, balance sheets, check registers, vendor balance detail sheets, and profit and loss sheets for tax years 2002 through 2006 (A&A)
- all tax returns of SAV-RX covering the tax years 2002 through 2006 (Sav-Rx)
- all audited and unaudited financial documents of Sav-Rx, LLC including, but not limited to, income statements, bank statements, balance sheets, check registers, vendor balance detail sheets, and profit and loss sheets for tax years 2002 through 2006 (Sav-Rx)
- all tax returns of James Barta covering the tax years 2002 through 2006 (Barta)

EPI, Barta, and A&A all assert claims for breach of contract and unjust enrichment. Mr. Barta further demands an accounting. *See* Doc. 135 at ¶ 33.

In summary, Sav-Rx, A&A and Barta still maintain that their tax and financial records are irrelevant to the subject matter of the litigation, particularly after the amendment of their pleadings. They opine that EPI can obtain all relevant financial information by other means and can even consult its own records to determine how much money it received from A&A pursuant to the parties' oral agreement (the exact terms of which are highly disputed in this lawsuit).

EPI argues that the requested financial information is relevant to the parties' claims and defenses, is not privileged, and is discoverable pursuant to Fed. R. Civ. P. 26(b).

**EVIDENCE SUBMITTED**

Based on the deposition testimony of Barbara Rigby and Malcolm Rigby, A&A, Sav-Rx and James Barta have provided the following description of the business venture with EPI:

> Defendants have agreed that A&A and EPI entered into an oral agreement whereby A&A would request fulfillment and shipment from EPI of prescriptions for A&A customers, and that A&A agreed to pay for prescriptions actually filled, shipped and timely delivered to its customers by EPI

* * * *

Orders from customers seeking drugs from outside the United States came in to A&A d/b/a Sav-Rx Prescription Services through prescriptions from the customers. The prescription orders would be input into a pharmacy system which relayed the order information to EPI and Malcolm Rigby. The orders were then to be filled and sent by EPI directly to the A&A customer. EPI then generated an invoice for the prescriptions allegedly based on the agreed upon formula, which was e-mailed to A&A. Payment would be remitted to EPI by A&A after approval by James Barta.

Doc. 131 at pp. 4-5/23, ¶¶ 5-7 (citations to the record omitted).

Barbara Rigby explained in her deposition that Sav-Rx was a pharmacy benefit manager and performed the role of advertising to its current clients, advising the clients that Sav-Rx could provide international drugs at lower costs than Sav-Rx could provide U.S. drugs. Sav-Rx had a call center which the end customer would call to order prescriptions. The customers would be entered into the Sav-Rx database and would be required to send their payments and copies of their prescriptions to Sav-Rx. Originally, Sav-Rx provided EPI with a daily list of orders for its clients. Later on, Sav-Rx allowed EPI to access the database and download the Sav-Rx orders into EPI's system. (Doc. 132 -5, p. 5/12, 54:20-56:22). According to Ms. Rigby, Barta agreed that Sav-Rx would be responsible for chargebacks or reships up to its existing level of 5%, but EPI would pay the difference over 5%. (Doc. 132 -5 at p. 6/12, 81:16-23). Sav-Rx would be invoiced and was supposed to pay the invoices in a timely fashion. (Doc. 132 -5 at p. 6/12, 82:12-15).

Barbara Rigby testified that EPI was supposed to keep track of what she described as Barta's "commission." Since Barta did not want those amounts kept on the books, Rigby accumulated the numbers of the accounts, keeping a running tab off the books, knowing that the funds were payable to Barta. Barta's money was not kept in a segregated bank account; the funds were kept in a segregated account within the company structure "so they wouldn't be considered dividends and [Barta] wouldn't have to pay taxes on them in the States[.]" (Doc. 132 -5 at p. 7/12, 99:9-14). The money had to remain within the company structure to protect Barta, and EPI retained title to the funds until they were paid out as a dividend. One-third of the profits was segregated for the first two years; however, when Barta stopped paying his invoices, Barbara Rigby was forced to withdraw

money from the segregated funds and notify Barta that she had done so. (Doc. 132 -5 at p. 7/12, 98:1-99:4).

According to Barbara and Malcolm Rigby, the only dividend from the EPI–A&A transactions to James Barta or his entities was one payment of approximately $601,200, which was sent to China in furtherance of one of Barta's business transactions. In this regard, Barbara Rigby testified that Barta wanted to use some of his dividend money to purchase Chinese artifacts to supply a store he was starting in New Orleans. Barta requested that Rigby set up a separate account with Royal Bank of Canada. In March 2005, Barta sent a payment of approximately $1.3 million to EPI. That payment was allocated to outstanding invoices. Then $601,200 was moved from EPI's account to the Royal Bank, and Barta instructed Royal Bank to send money to the Chinese company. Rigby ultimately reported this transaction as a dividend, as Barta would not provide any documentation showing that EPI had ownership. (Doc. 132 -5 at pp. 8-9/12, 104:15-105:19).

The parties have also submitted portions of James Barta's deposition in support of their various arguments. Mr. Barta testified that all three entities, i.e., Barta, A&A and Sav-Rx, "are me." (8:2-9).[1] He testified regarding that Sav-Rx, LLC was an entity set up to do business in Canada but was never actually capitalized. (13:18-14:1). Barta owns other "Sav-Rx" businesses, such as "Sav-Rx Prescription Services." According to Barta, his Sav-Rx entities are all doing business as "A&A Drug Company" and the only company that files tax returns for prescription income is A&A Drug Company. (16:20-25; 21:1-13). Barta then testified that his wife also has an ownership interest in A&A; however, his attorney instructed him not to answer questions about the percentages of ownership on grounds of an unidentified privilege. (22:12-24:16).

As to the oral agreement at issue in this lawsuit, Barta elaborated that he, A&A and/or Sav-Rx were supposed to get 10% of the total gross sales for "doing all the work" for EPI. He considered himself, A&A and Sav-Rx to be all the same. (40:22-25). He explained that Malcolm Rigby

---

[1] Walter Hoff, who served as CEO of Sav-Rx, testified at his deposition that Sav-Rx was a privately owned company and was "really Jim Barta, one and the same" and was not a separate legal entity. He had never seen any tax returns for A&A Drug Company, but believed it to be the parent of Jim Barta Holdings. (Doc. 121 -13 at p. 7/10).

organized EPI in the British Virgin Islands (Barbados) so that the co-owners, who reside in Canada, would have certain tax advantages. (44:23-45:19). Barta testified that A&A was a "Subchapter S" corporation. (41:19-20). He "supposed" that A&A and its customers received prescriptions from EPI, for which EPI would be paid by A&A. (62:23). The 10% fee was to be credited or paid to A&A or Barta, which Barta considered to be the same thing. He testified he claimed the 10% on his personal tax return and on A&A's Subchapter S return. (63:3-12). According to Barta, Sav-Rx, doing business as A&A, was doing the work for EPI, and A&A was receiving the 10%. (63:16-25).

EPI has been provided with six Excel spreadsheet reports depicting certain financial data for Sav-Rx, Barta, and/or A&A. According to Walter Hoff, the six spreadsheets contained a list of "every A&A customer who ordered Canadian drugs from the A&A–EPI agreement during the years 2002 through 2006. (Doc. 132 -4 at p.2). Barta, however, observed during his deposition that some of the numbers in the report did not look right and did not make sense. (81:13-82:24). He acknowledged, "more or less," that he had withheld the 10% administrative fee and the one-third profit (135:19-23), and kept those funds in a Sav-Rx bank account. He testified he did not know which bank held the account and he could not name the other signatories to the account. He stated he did not know how much of the money in the Sav-Rx account in July 2006 came from the 10% and one-third profits he had admittedly withheld. (137:1-138:23). Walter Hoff states that from 2002 to 2006, A&A, doing business as Sav-Rx Prescription Services "did corporate business with several entities other than EPI. A&A's corporate bank account was not segregated to only transactions with EPI." (Doc. 132 -4 at ¶ 6).

**LEGAL ANALYSIS**

Under Fed. R. Civ. P. 26(b)(1), the parties to a lawsuit may obtain "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the

information sought can have no possible bearing' on the claim or defense of a party." *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).

All discovery is subject to the limitations imposed by Rule 26(b)(2), and the court must limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

This court has previously taken the position that when the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant, or is "of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Moses v. Halstead*, 236 F.R.D. at 671. If the relevancy of the discovery request is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Id.*

In this case, the very terms of the parties' oral agreement are in dispute. Mr. Barta owns one-third of EPI, and is the sole owner of A&A and Sav-Rx. He has alleged, among other things, that EPI agreed to pay or credit to him one-third of the total gross profit on the sales of prescriptions, pay or credit to A&A 10% of the total gross sales of the prescriptions, and to segregate and accumulate funds due and owing James Barta and A&A in specified bank accounts for the benefit of James Barta and A&A during the pendency of the agreement. Barta admitted that he withheld payments on EPI's invoices to cover the 10% administrative fee and the one-third profit. Barbara Rigby's deposition testimony suggests, however, that those amounts were being recorded internally by EPI for future distribution to Barta because they would become taxable when actually distributed to Barta. She drew on those funds to cover EPI's expenses when Barta stopped paying his invoices.

Mr. Barta has stated repeatedly that he, A&A and Sav-Rx were one and the same. Barta's deposition testimony strongly suggests that the financial records of A&A and Sav-Rx are as one with his personal financial records. Considering the nature of the parties' claims and defenses, together with the portions of Mr. Barta's deposition that were submitted by the parties, it is obvious that EPI has requested and wishes to subpoena relevant information. Relevant financial information in the possession of Barta, A&A and/or Sav-Rx is not immune from discovery simply because EPI has maintained its own records about its transactions with Barta, A&A and/or Sav-Rx.

Turning to the narrower issue of the discovery of income tax returns, "[c]ourts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery." *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997). Nevertheless, many courts require a heightened showing of relevance and necessity before ordering the disclosure of such information. *See generally Terwilliger*, 176 F.R.D. at 216-17.

This court has been unable to identify any binding precedent on the issue but has considered decisions from other jurisdictions. The court for the District of Minnesota recently observed,

> [A] preponderance of authorities set out a two-part standard for deciding whether tax returns should be disclosed. First, a court examines whether the returns are relevant. If so, then the question becomes whether there is a compelling need for the returns. When looking at whether there is a compelling need, a court examines whether the information in the returns is readily obtainable from another source. *See, e.g., Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006); *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006).
>
> When applying this standard, most courts use a burden-shifting test. The party seeking discovery has the initial burden to show that the tax returns are relevant. The burden then shifts to the adverse party, to show the information in the tax returns is more readily obtainable elsewhere. *See, e.g., A. Farber & Partners, Inc.*, 234 F.R.D. at 191; *Gattegno v. Pricewaterhousecoopers*, LLP, 205 F.R.D. 70, 72 (D. Conn. 2001). *But see Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997) (ruling that the party seeking discovery has the burden to show that tax returns are the best available source).

*E.E.O.C. v. Ceridian Corp.*, — F. Supp. 2d — , 2008 WL 5786889 at *1-2, No. 07-4086 (D. Minn., Sept. 16, 2008).

In *Schoenbaum v. E.I. DuPont de Nemours & Co.*, 2009 WL 249099, No. 4:05CV01108 (E.D. Mo., Feb. 2, 2009), the court acknowledged that there is a public policy against the unnecessary disclosure of tax returns because of the need to encourage taxpayers to file complete and accurate returns, and good cause must be shown for federal income tax returns to be discoverable. 2009 WL 249099 at *1. In determining that the plaintiffs, purchasers of genetically-modified seeds, were required to provide copies of their tax filings related to seed purchases and farming activities, the court considered (1) whether the returns were relevant to the subject matter of the action, and (2) whether there was a compelling need for the returns because the information contained in the tax returns was not otherwise readily available. The court found that the tax records were relevant and there was a compelling need for their production because, even after deposing 11 of the plaintiffs, there were still "significant gaps" left in the plaintiffs' records regarding their seed purchases. *See also Sowers v. Gatehouse Media Missouri Holdings, Inc.*, 2009 WL 1106946, No. 4:08CV633 (E.D. Mo., Apr. 23, 2009) (plaintiff in age discrimination case was required to produce her state and federal income tax returns with supporting schedules and W2s).

In *United States v. Certain Real Property known as and Located at 6469 Polo Pointe Way, Delray Beach, Fla.*, 444 F. Supp. 2d 1258 (S.D. Fla. 2006), the subject property was seized and subject to forfeiture based upon a stock fraud allegedly committed by the owner, Steven Zeldin. Raymond Zorabedian (the claimant) filed a claim, contending that he was an innocent owner of money owed to him pursuant to an oral agreement to provide interior designing services for Zeldin. The claimant alleged that he had no involvement with Zeldin's alleged fraudulent stock sales; although Zeldin had offered to pay the claimant a commission for referring people to Zeldin for purchases of stock, no commissions were ever paid. The claimant's testimony about the amount of income he received from interior design contracts was directly contradicted by another witness. For that reason, the government filed a motion to compel, seeking discovery of the claimant's tax returns.

The court noted the split in authority as to whether tax returns are entitled to enhanced protection from discovery, acknowledging that most courts hold that a party seeking disclosure must

show some compelling need in addition to relevance. 444 F. Supp. 2d at 1262-63. The Eleventh Circuit, however, had declined to require a "compelling need" before ordering disclosure of tax records. *Id.* at 1263 (citing *Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 853 (11th Cir. 1997)). Furthermore, other courts have held that equitable considerations may require the disclosure of tax returns where a party has placed his income at issue. *Id.* at 1264.

This court is allowed "great latitude" in discovery matters. *Nitro Distributing, Inc. v. Alitcor, Inc.,* — F.3d —, 2009 WL 1175504 at *10, No. 08-1451 (8th Cir., May 4, 2009); *Pleasants v. Am. Express Co.*, 541 F.3d 853, 859 (8th Cir. 2008 ). Applying any of these analyses, it is beyond question that the materials sought by EPI are highly likely to contain unprivileged information that is relevant to the parties' claims and defenses. The very terms of the oral agreement are in dispute. The deposition testimony is conflicting regarding the 10% and one-third amounts allegedly payable by EPI to Mr. Barta, or withheld by Mr. Barta against invoices, and in what amounts. Mr. Barta has himself placed his income (and that of A&A and Sav-Rx) at issue, and the financial records of Mr. Barta, over which he has full control, would appear to be inseparable from those of his various business entities.

The court finds that EPI's motions should be granted in their entirety.

**ORDER**

**IT IS ORDERED:**

1. The motion of A&A, Sav-Rx and James Barta for leave to file a surreply brief (Doc. 141) is denied.

2. EPI's motions for leave to issue subpoena duces tecum (Doc. 81) and to compel discovery (Doc. 119) are granted in their entirety.

3. All information produced pursuant to this order shall be subject to the Protective Order (Doc. 29) filed on October 3, 2007.

Pursuant to NECivR 72.2, a party may appeal this order to the district judge by filing a "Statement of Appeal of Magistrate Judge's Order" no later than **June 1, 2009.** The filing of a statement of appeal will not stay this order pending appeal. **Any requests for a stay shall be filed by separate motion at the time the appeal is filed.**

**DATED May 20, 2009.**

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**